FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2017 FEB 14  AM 8:49

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

FAST FORWARD ACADEMY, LLC,

Plaintiff,

v.

Case No.: 6:17-CV-263-ORL-37-DCI

SURGENT HOLDING CORPORATION, a
Pennsylvania Corporation; and SURGENT
CPA REVIEW LLC, a Pennsylvania limited
liability company,

Defendants.

## COMPLAINT

Plaintiff, FAST FORWARD ACADEMY, LLC ("Plaintiff") hereby files this Complaint for Declaratory Relief against Defendants, SURGENT HOLDING CORPORATION and SURGENT CPA REVIEW LLC, and states:

### PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of Florida with it principal place of business located in Orlando, Florida.

2. Upon information and belief, Defendant, Surgent Holding Corporation, is a corporation organized and existing under the laws of Pennsylvania with it principal place of business located in Devon, Pennsylvania.

3. Upon information and belief, Defendant, Surgent CPA Review, LLC, is a limited liability company organized and existing under the law of Pennsylvania with it principal place of business located in Devon, Pennsylvania.

4. Upon information and belief, Surgent CPA Review is a wholly-owned subsidiary

of Surgent Holding Corporation and one or both Defendants is the successor in interest to non-party Matrix Learning Systems, Inc DBA ExamMatrix ("Matrix") under a certain copyright license agreement with Plaintiff.

## JURISDICTION AND VENUE

5. This is an action for declaratory judgment for non-infringement arising under the United States Copyright Act of 1976, 17 U.S.C. §101 *et seq.* (Copyright Act), and thus this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1338, and 17 U.S.C. §505.

6. This is also a declaratory action under 28 U.S.C. §§2201, and 2202 (Federal Declaratory Judgment Act) to determine the scope of copyright a license granted under a license agreement between the parties.

7. This Court has personal jurisdiction over the Defendants because: (1) Defendants' predecessor entered into a license agreement with Plaintiff in Florida; (2) Defendants do business in Florida; and (3) false assertions of copyright infringement were directed to Plaintiff in Florida.

8. Venue is proper under 28 U.S.C. §1391.

## FACTUAL BACKGROUND

9. On January 11, 2012, the Plaintiff entered into a License Agreement ("Agreement") with Matrix. See **Exhibit A**.

10. According to the Agreement, Matrix and Plaintiff had separately been granted licenses to "various Multiple Choice Questions and Task-Based Simulations from previous Certified Public Accountant Examinations" from the American Institute of Certified Public Accountants (AICPA). See Ex. A, second paragraph.

11. The Agreement permitted Plaintiff to use Matrix's copyrighted "Materials,"

2

described as:

> Exam Matrix CPA Exam Review, Multiple' Choice Questions with answers and explanations, answers and explanations to Multiple Choice Questions provided by the AICPA, Task-Based Simulations with Answer and Explanations, answers and explanations to Task-Based Simulations provided by the AICPA, Reference Volumes, Supplements and any additional Supplements that may be published on a yearly basis, during the term of this agreement ("the Materials").

Id., p.1, second paragraph.

12. Pursuant to the Agreement, Matrix granted to Plaintiff a license to:

> reprint and/or adapt, publish, distribute and sell throughout the world, at the Licensee's own effort, cost, and expense, the Materials either in whole or in part, as may be included in various of Licensee's current publications, or such new publications of Licensee as Licensee notifies Licensor from time to time contain the Materials (the "Work").

Id. at §1.

13. The Agreement also allowed Plaintiff to modify any of the Materials for commercial use as Plaintiff deemed necessary.

14. Plaintiff's "Work" includes study materials used by students to study and prepare for the CPA Exam.

15. The study materials include hard-copy books and practice questions and simulations accessed through Plaintiff's website and stored on Plaintiff's servers ("Web Content").

16. The hard-copy books and Web Content comprise Plaintiff's complete study program. One has little value without the other.

17. When students purchase Plaintiff's complete study program, they are provided secured, password-protected access to Plaintiff's website containing the Web Content.

18. Matrix was aware of Plaintiff's use of the Work for its complete study program and both parties to the Agreement anticipated that Plaintiff would use the Work to comprise a complete study program for sale to students.

19. Plaintiff agreed to pay royalties on a sliding scale (between 7%-11%) based upon Plaintiff's annual net sales of study materials containing the Materials. See Ex. A., §2.

20. On or about February 13, 2014, Matrix sold its assets, including materials and rights under the Agreement, to Abitus, Inc. ("Abitus").

21. At some point thereafter, Defendants, who are Plaintiff's direct competitors, purchased Abitus' assets and became the successor to Matrix under the Agreement.

22. The term of the Agreement ended on December 31, 2016, pursuant to a mutually agreed-upon extension of the initial term under the Agreement.

23. In 2016, Plaintiff negotiated with Defendants for a renewal or extension of the Agreement, but no agreement was reached.

24. Upon termination of the Agreement, Section 5 provides for a wind-down as follows:

> Following termination, Licensee may dispose of copies of the Work which are on hand for a period of one hundred eighty (180) days provided that the Licensee pays AICPA the royalties set forth in paragraph 2 for each copy of the Work sold or distributed. Ex. A, §5.

25. Following termination, based upon its reasonable interpretation of Section 5 of the Agreement, Plaintiff continued to sell existing Work containing the Materials and agreed to pay royalties because it had the express right to "dispose of copies of the Work" for a period of 180 days.

26. Following termination, Plaintiff did not cut-off access to Web Content by those students who had already paid for study materials containing the Materials (and who had thus also paid a royalty to Defendants and AICPA).

27. On February 3, 2017, Defendants, through their counsel, sent a Notice of Infringement ("NOI") to Plaintiff. See **Exhibit B**.

4

28.     Defendants claim that Plaintiff has infringed on Defendants' copyrighted material since the Agreement terminated on December 31, 2016.

29.     Defendants claim that Plaintiff's actions give rise to actions for fraud, unjust enrichment, and copyright infringement that will render Plaintiff liable for damages of up to $150,000 per infringed work. See Ex. B, p. 2.

30.     Although Plaintiff reasonably believes its conduct is within the scope of the Agreement, Plaintiff has stopped selling any alleged infringement content in an abundance of caution.

31.     Plaintiff reasonably believes that Section 5 entitles Plaintiff to continue selling Work which includes both digital and hard-copy content for up to 180 days following termination of the Agreement.

32.     The "Work" and "Materials" as described in the Agreement make no distinction between digital content and hard-copy print content.

33.     Plaintiff's hard-copy content is of little value without the accompanying digital content.

34.     Plaintiff reasonably believes that it has no obligation to take back hard copies of books sold or to cut-off online access to Web Content for students who previously paid for rights to access such content.

35.     Since Matrix drafted the Agreement, any doubts regarding interpretation of the Agreement should be construed in Plaintiff's favor when determining the parties' intent.

36.     By way of Defendants' credible threat of immediate litigation and demand that Plaintiff cease using the Materials used under a valid license, there presently exists a justiciable controversy regarding whether Plaintiff's use and sale of the Work after December 31, 2016

constitute infringement of any copyright owned by Defendants.

## COUNT I
### (Declaration of Non-Infringement of Copyright)

37. Plaintiff restates Paragraphs 1-36 above as if fully set forth herein.

38. Plaintiff has not infringed nor done anything improper. Plaintiff was authorized to provide students with "Work" containing the "Materials" as described in the Agreement and nothing required Plaintiff to take back the Work upon termination.

39. Nothing in the Agreement require Plaintiff, upon termination of the Agreement, to revoke or cut off its students' access to the content. Such students had already paid for access and Plaintiff, in turn, paid royalties to Defendants for those sales.

40. Plaintiff is entitled, under Section 5, to "dispose of" or sell Work created under the Agreement for 180 days following termination.

41. Defendants have not and will not suffer any damages resulting from Plaintiff's conduct. For Work sold pursuant to Section 5 of the Agreement, Plaintiff has or will pay the royalties as agreed between the parties.

42. For Work sold prior to termination of the Agreement, royalties have already been paid. Plaintiff does not copy or distribute such Work, but merely provides online access to those students who already paid. Plaintiff generates no additional revenues from any students accessing such Work.

43. Plaintiff's use of the Materials constitutes a fair use in light of the Agreement.

44. To resolve the issues raised by Defendants NOI, Plaintiff is entitled to a declaratory judgment that it is not infringing, has not infringed, and is not liable for infringing any valid copyright owned by Defendants, either directly or by contributing to infringement by others.

## COUNT II
### (Rights of Usage Following Agreement Termination)

45. Plaintiff restates Paragraphs 1-36 above as if fully set forth herein.

46. Plaintiff is entitled to a declaratory judgment that it has specific "wind down" rights under Section 5 of the Agreement. Such rights include the usage, sale, and distribution of Plaintiff's Work containing the Materials for a period of 180 days following the termination of the Agreement. "Disposal" in this context must mean and refer to continued use, sale, and distribution. Otherwise, the payment of royalties for the same would be absurd.

47. In order for Plaintiff to have the benefit of its bargain, "Work" as used in Section 5 of the Agreement must refer to all digital content as well as hard-copy content as described in the Agreement.

48. The express language of Section 5 provides that Plaintiff will pay royalties to AICPA; however, this is incomplete or incorrect. Plaintiff's reasonable interpretation of this provision is that it shall continue to pay royalties to Defendants as described in Section 2 for any Work sold or distributed under Section 5.

49. To resolve issues raised by Defendants' NOI, Plaintiff is entitled to a declaration that:

   a. it is not required under the Agreement to take back any Work sold to its students, whether in hard-copy or digital format;

   b. it is not required under the Agreement to cut-off access to any Web Content for students who already paid (and thus paid royalties to Defendants) for such access; and

   c. it is entitled to continue selling Work which includes hard-copy and digital content for 180 days following termination of the Agreement.

7

## COUNT III
### (Declaratory Judgment of No Damages or *De Minimis* Damages)

50. Plaintiff restates Paragraphs 1-35 above as if fully set forth herein.

51. An actual justiciable controversy exists by way of Defendants' credible threat of immediate litigation and demand that Plaintiff cease using Materials used under a valid license.

52. Defendants have suffered no damages. For all sales occurring until termination of the Agreement, Plaintiff paid royalties as agreed under the Agreement.

53. For any sales occurring post-termination and pursuant to the wind-down provision in Section 5, Plaintiff has (or will) pay royalties as agreed under the Agreement.

54. Students who continue to access the Web Content through Plaintiff's website have already paid for that access. Royalties for the same have been paid to Defendants. Plaintiff is not copying or distributing such content for sale or distribution to the public but merely provides access to those students who already paid for the Work. There is no effect upon the potential market for such work.

55. To resolve the issues raised by Defendants' NOI, Plaintiff is entitled to a declaratory judgment that Defendants have suffered no damages. Alternatively, Plaintiff is entitled to a declaration that it reasonably believed it was not infringing Defendants' copyrights and requests the court issue a declaratory judgment that the royalties which Plaintiff paid or pays to Defendants under Section 2 of the Agreement are sufficient to compensate Defendants for any alleged damages; or, alternatively, that the maximum amount of statutory damages that may be awarded in this case is $200. If damages in any such *de minimis* amount are awarded, they should be deducted as a set-off from an award to Plaintiff of its reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

8

(1) For a declaration that Plaintiff has not infringed on Defendants' copyrights;

(2) For a declaration that Plaintiff's post-termination wind-down rights under Section 5 of the Agreement permit it to engage in continued sales and distribution of Work on hand, including hard-copy and digital content, for 180 days;

(3) For a declaration that it is not required to take back or revoke access to Work, including Web Content, for students have already paid for access (and in connection with which royalties have already been paid to Defendants);

(4) For a declaration that Plaintiff is entitled to no damages or, in the alternative, *de minimis* damages in a maximum amount of $200;

(5) An award of reasonable costs and attorneys' fees; and

(6) Such other relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

*/s/ Eric C. Boughman*
James E. Shepherd, Esq., FBN: 0947873
Eric C. Boughman, Esq., FBN: 11079
Forster Boughman & Lefkowitz
2200 Lucien Way, Suite 405
Maitland, Florida 32751
Phone: (407) 255-2055
Fax: (407) 264-8295
Primary E-mail: *shepherd@fbl-law.com*
  *boughman@fbl-law.com*
Secondary E-mail: *service@fbl-law.com*